**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| **GAYLE BAKER, DONALD J. BRUNELLE and JUDITH A. BRUNELLE, JANE FRASER, BURKE MCCALL HARRISON and VICKI S. HARRISON, JUDITH C. PHILLIPS, ROBERT W. WILLIAMSON, III and RENEE J WILLIAMSON,** | ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No.**   2:20-cv-3 _____ |
| **v.** | ) ) | |
| **MORTGAGE of AMERICA LENDERS, LLC,** | ) ) ) | |
| **Defendant.** | ) ) | |

---

**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, CIVIL PENALTIES AND ATTORNEYS 'FEES AND EXPENSES OF LITIGATION**

---

Plaintiffs, Gayle Baker, Donald J. Brunelle and Judith A. Brunelle, Jane Fraser, Burke McCall Harrison and Vicki S. Harrison, Judith C. Phillips, and Robert W. Williamson III and Renee J. Williamson, are hereinafter collectively referred to as "Plaintiffs." For years, the Defendant has engaged in land-clearing and construction work at the Captain's Cove Subdivision without making any effort to manage the copious amounts of sediments and other pollutants that have washed from the site and remain in wetlands and other sensitive natural areas of St. Simons Island. These actions violate the Clean Water Act, and Plaintiffs make the following allegations:

## NATURE OF THE ACTION

1.     This is a citizen civil suit to enforce the statutory requirements of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a) against Defendant Mortgage of America Lenders, LLC (hereinafter referred to as "Mortgage of America" or "Defendant"), for violations of the Clean Water Act.

2.     Mortgage of America is the owner of the construction project known as Captain's Cove Subdivision (hereinafter "Captain's Cove"), an 11.26 acre residential subdivision on St. Simons Island, Glynn County Georgia.  Stormwater runoff from Captain's Cove flows into a detention pond (referred to as Wetland "C", Detention Pond A, and "borrow pit" in the accompanying documents) that the United States Army Corps of Engineers ("Corps") has determined to be a jurisdictional water of the United States, and other wetlands herein referred to as "Subject Wetlands."

3.     Defendant dredged and filled a vegetated wetland to create Detention Pond A in Wetland "C" and graded its boundaries to re-shape Detention Pond A.  These activities filled and disturbed approximately 1.5 acres of jurisdictional wetlands.

4.     Defendant has discharged and continues to discharge polluted stormwater containing silt, sediment, and other pollutants without permits into Subject Wetlands, which adversely affects the tributaries of Village Creek and its marshlands, a traditionally navigable water of the United States subject to the ebb and flow of the tide.  Defendant has failed to comply with federal, State, and local laws and regulations in violation of CWA § 301(a), 33 U.S.C § 1311(a); CWA § 401, 33 U.S.C. § 1341, CWA § 402, 33 § U.S.C. 1342; and CWA § 404, 33 U.S.C. § 1344.

5.      The Storm Water Management Report for Captain's Cove submitted to the State of Georgia (Exhibit "A" at 9) indicated that the detention pond is designed as a "no-discharge" system.  Consequently, the General National Pollution Discharge Elimination System Permits (General "NPDES" Permit) issued by the State of Georgia allowed Defendant to construct a "no discharge" system.

6.      Upon information and belief, the water level in Detention Pond A is routinely over the top of its outlet structure; thereby creating repeated discharges of stormwater and pollutants in violation of the General NPDES Permit.

7.      Defendant has conducted and continues to conduct unpermitted activities that result in the discharge of polluted stormwater from Detention Pond A [the location of Detention Pond A is shown on Exhibit "B" at 2 and labeled as "C. (BORROW PIT)"] into Subject Wetlands and in the unauthorized placement of dredged and fill materials in Wetland "C".  Such unpermitted activities include the excavation of sand and other soils in and along the margins of Wetland "C", and placement of unauthorized stormwater drainage structures and emergency overflow system in Detention Pond A.

8.      Upon information and belief, Defendant has failed and continues to fail to implement and maintain Best Management Practices ("BMPs") in Captain's Cove as are necessary to prevent or minimize erosion and sedimentation runoff from the subdivision as required under the General NPDES Permits issued to Mortgage of America.

9.      The Corps authorized Mortgage of America to place dredged and fill materials in waters of the United States in approved areas of Captain's Cove subdivision under Nationwide Permits 14 (linear transportation projects) and 18 (minor discharges).  These CWA § 404 Nationwide Permits require Mortgage of America to "obtain and comply with all appropriate

federal, state, and local authorizations required for this type of activity" and requires that "[a]ll work conducted under this permit shall be located, outlined, designed, constructed and operated in accordance with the minimal requirements of the Georgia Erosion and Sedimentation Control Act of 1975, as amended." (*See* Exhibit "C" at 2).  Mortgage of America has violated and continues to violate these provisions of its Nationwide Permits by its failure to maintain proper erosion and sedimentation control devices and by continuing to discharge stormwater and pollutants from Detention Pond A.

10.     Because of Mortgage of America's non-compliance, the state-issued Water Quality Certification for Nationwide Permits 14 and 18, used by Defendant to authorize construction of the Captain's Cove, is invalid pursuant to CWA § 401(a)(1), 33 U.S.C. § 1341(a)(1).  Defendant's non-compliance with the terms and conditions of these Nationwide Permits invalidates their use, and as a result, each violation of CWA §§ 301(a), 402, and 404 are violations of CWA § 401.

## PARTIES, JURISDICTION, AND VENUE

### *Plaintiffs*

11.     Plaintiff Gayle Baker is the owner of real property located at 127 Daufuski Lane and 131 Daufuski Lane, St. Simons Island, Glynn County, Georgia 31522.  Ms. Baker resides at 821 Kinds Grant, St. Simons Island, GA 31522.  Ms. Baker has an interest in the preservation of the aesthetic and recreational benefits of the wetlands directly on and adjacent to her property located on St. Simons Island, Glynn County, Georgia.

12.     Plaintiffs Donald J. Brunelle and Judith A. Brunelle are the owners of real property located at 251 Villager Dr., St. Simons Island, Glynn County, Georgia 31522.  The. Brunelles reside at 251 Villager Dr., St. Simons Island, Glynn County, Georgia 31522.  The Brunelles have an interest in the preservation of the aesthetic and recreational benefits of the wetlands directly on and adjacent to their property on St. Simons Island, Glynn County, Georgia.

13.     Plaintiff Jane Fraser is the owner of real property located at 165 North Harrington Road, St. Simons Island, Glynn County, GA 31522.  Ms. Fraser resides at 227 W. Sixteenth Street, Sea Island, Glynn County, GA  31561.  Ms. Fraser has and continues to be affected and damaged by the Defendant's activities. Ms. Fraser has suffered damages to her person and property as a result of the Defendant's actions and inactions described in this Complaint and has an interest in the preservation of the aesthetic and recreational benefits of the wetlands directly on and adjacent to her property on St. Simons Island, Glynn County, Georgia.

14.     Plaintiffs Burke McCall Harrison and Vicki S. Harrison, whose principal residence is 253 Villager Dr., St. Simons Island, Glynn County, Georgia, 31522, are the owners and/or occupiers of real property that has and continues to be affected and damaged by the Defendant's activities.  The Harrisons have an interest in the preservation of the aesthetic and recreational benefits of the wetlands directly on and adjacent to their property.

15.     Plaintiff Judith C. Phillips, whose principal residence is 115 Daufuski Lane, St. Simons Island, Glynn County, Georgia, 31522, is the owner and/or occupier of real property that has and continues to be affected and damaged by the Defendant's activities. Ms. Phillips has an interest in the preservation of the aesthetic and recreational benefits of the wetlands directly on and adjacent to her property.

16.     Plaintiffs Robert W. Williamson and Renee J. Williamson, whose principal residence is 121 Daufuski Lane, St. Simons Island, GA  31522, are the owners and/or occupiers of real property that has and continues to be affected and damaged by the Defendant's activities. The Williamsons have an interest in the preservation of the aesthetic and recreational benefits of the wetlands directly on and adjacent to their property.

17.     Plaintiffs have an interest in protecting and maintaining the health of coastal Georgia and its wetlands including the Subject Wetlands.  These interests are adversely affected by the Defendant's continuing violations of the CWA §§ 401(a), 402, and 404.

18.     By illegally filling the Subject Wetlands, Plaintiffs suffer, and will continue to suffer, from harmful environmental repercussions.  These injuries are actual and concrete, and the relief sought in this action would redress them.

### *Defendant*

19.     Defendant Mortgage of America Lenders, LLC, formerly known as Mortgage of America, Inc., (hereinafter "Mortgage of America" or "Defendant"), is a Georgia limited liability company with a principal address at P.O. Box 2044, Woodstock, Georgia, 30188.  Mortgage of America transacts business in Glynn County, Georgia and is or was the owner and/or developer of the Captain's Cove located in Glynn County, Georgia.

20.     In accordance with Georgia Code Ann. § 14-2-510, Mortgage of America is deemed to reside in Glynn County and is subject to the venue of this Court. Mortgage of America may be served with process through its registered agent Emily Bishop, who can be found at 3850 Canton Road, Suite 1110, Marietta, Georgia 30066.

### *Jurisdiction*

21.     This court has personal jurisdiction over Defendant.

22.     This is a civil citizen action brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq., more commonly called the Clean Water Act. *See* 33 U.S.C. §§ 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief under the Constitution and laws of the United States).

*Venue*

23.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district, and under 33 U.S.C. § 1365(c) because the sources of the violations described in this Complaint are located within this judicial district.

## NOTICE

24.     Plaintiffs sent a letter to counsel for the Defendant on September 20, 2019 ("Notice Letter").  In the Notice Letter, Plaintiffs notified Defendant of its violations under the Clean Water Act and of Plaintiffs' intent to file suit for such violations after sixty (60) days, as required by 40 C.F.R. § 135.2(a)(1) (Mar. 19, 1991). A copy of the Notice Letter and its attachments is incorporated herein as Exhibit "D".

25.     The Notice Letter was also sent to the state and federal regulatory agencies shown in Exhibit "D" and as required by Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).

26.     More than sixty (60) days have passed since the Notice Letter was sent to Defendant and the regulatory agencies.

27.     Despite receiving the Notice Letter, Defendant has refused and failed to cease violations of the CWA alleged in the Notice Letter.

28.     The violations of the CWA identified in the Notice Letter are continuing at this time and are reasonably likely to continue in the future.

29.     Plaintiffs received notice of a proposed issuance of the Environmental Protection Agency's (the "EPA's") Consent Agreement and Final Order ("CAFO"), Docket ID No. CWA-04-2019-9970(b); Public Notice No. CWA-04-2019-9970(b), dated October 11, 2019.  The CAFO

proposed to assess an administrative penalty of $20,000 to Mortgage Lenders of America, LLC under the authority of CWA § 309(g)(2)(A), 33 U.S.C. § 1319(g)(2).  *See* Exhibit "E".

30.     The CAFO alleges that Defendant's unauthorized activity impacted "approximately 0.25 acres of wetlands" adjacent to the Frederica River and Village Creek. The CAFO, however, does not indicate the particular area within Captain's Cove where the impacted 0.25 acres is located, nor does it provide any information on how the EPA determined 0.25 acres to be the extent of the violation.  The CAFO states that the dredged and fill material remains in the waters of the United States to date, but is devoid of any specific information about the affected wetlands or other waters, how these wetlands or other waters have been adversely affected, or where the dredge and fill material remains at this time.

31.     The CAFO has no requirement to restore the areas impacted by unauthorized activity, to monitor the recovering impacted areas, or directing Defendant to refrain from impacting the same wetlands in the future.

32.     On November 8, 2019, Plaintiffs submitted a timely comment to the proposed CAFO requesting that the EPA specify the locations(s) of the direct fill, indicate the areas of wetlands and other waters that have been adversely affected, and describe the resources affected by the Defendant's alleged unauthorized activity.  *See* Exhibit "F".

33.     To date, the EPA has not provided a response to the Plaintiffs' comment to the proposed CAFO.

34.     Under CWA § 505(b)(1)(B) a citizen suit against an alleged violator may be barred if the government is already diligently prosecuting the alleged violation "*in a court of the United States, or a State* to require compliance with the standard, limitation, or order."  (emphasis added).

35.     The CAFO is not judicial action and does not preclude the Plaintiffs' suit.  *E.g.*, *Kendall v. Thaxton Rd. LLC*, No. 1:09-CV-3520-TWT, 2013 WL 210892, at *6 (N.D. Ga. Jan. 18, 2013) ("As no civil or criminal action has been filed by the EPD [Environmental Protection Division] against any Defendant in a court, [CWA § 505(b)(1)(B) does not preclude the citizen suit here.").

36.     In addition, under CWA § 309(g)(6)(A) a citizen suit seeking a civil penalty may be barred from maintaining an action for "any violation . . . (i) with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action under this subsection, . . . or (iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be." 33 U.S.C. § 309(g)(6)(A)(i)&(iii).

37.     The bar at CWA § 309(g)(6)(A) does not apply when "notice of an alleged violation of section 1365(a)(1) of this title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given." § 309(g)(6)(B).

38.     Plaintiffs' Notice Letter dated September 20, 2019 provided notice to Defendant of the alleged violations.  This Complaint has been filed prior to the 120th day after the Notice date. Therefore, this action is not barred by any prior administrative action under CWA § 309(g).

39.     Plaintiffs are informed and believe that the federal or state agencies have neither commenced nor are diligently prosecuting any action to redress the violations alleged in the Notice Letter and in this Complaint.

40.     Thus, Plaintiffs are not barred from seeking relief from Defendant's violations of the procedural and substantive requirements of Section 301(a) of the Clean Water Act, 33 U.S.C. 33 U.S.C. § 1311(a).

## LEGAL BACKGROUND

### *Clean Water Act Permitting Structure: Section 404 of the Clean Water Act*

41.     Section 301(a) of the Clean Water Act provides, in pertinent part, that "except as in compliance with . . . § 1344 of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a).

42.     The Clean Water Act defines the term "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

43.     The term "pollutant" is broadly defined to include dredged spoil, rock, sand, and agricultural waste discharged into water.  33 U.S.C. §1362(6).

44.     The term "point source" means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

45.     Section 404 of the Clean Water Act authorizes the Corps to issue permits for the discharge of dredged or fill material into "navigable waterways." 33 U.S.C. § 1344. Likewise, 33 C.F.R. § 323.3(a) charges the Corps to issue Clean Water Act Section 404 permits "for the discharge of dredged or fill material into waters of the United States."

46.     "Navigable waters" includes wetlands that directly about traditional navigable waters or have a significant nexus with traditional navigable waters.[1]

47.     Under Section 401 of the Clean Water Act, a federal agency cannot issue a Section 404 permit for an activity that may result in a discharge of dredged or fill material to a water of the United States until the State where the discharge would originate has granted or waived Section 401 Water Quality Certification. See 33 U.S.C. § 1341.

**Clean Water Act Permitting Structure: Section 401 of the Clean Water Act**

48.     Section 401(a)(1) of the Clean Water Act requires that any application to the Corps for a Section 404 permit must include a "certification from the State in which the discharge originated or will originate…[and] that any…discharge will comply with [other sections of the Clean Water Act]." 33 U.S.C. § 1341(a)(1).

49.     This certification from the state is known as a Section 401 Water Quality Certification ("401 WQC").

50.     Denying certification prohibits the federal permit or license from being issued. 33 U.S.C. § 1341(a)(1).

51.     The State of Georgia is authorized under Section 401 to issue a 401 WQC for all Section 404 permits.

52.     Individual Section 404 permits require that a corresponding Section 401 WQC be issued by the State of Georgia.

---

[1] *See* Memorandum from U.S. Army Corps of Engineers and U.S. EPA, "Clean Water Act Jurisdiction Following U.S. Supreme Court Decision in <u>Rapanos v. United States & Carabell v. United States</u>," available at https://www.epa.gov/sites/production/files/201602/documents/cwa_jurisdiction_following_rapanos120208.pdf;. *Rapanos v. United States*, 547 U.S. 715, 742 (2006).

53.     By letter dated March 12, 2012 to the Corps Savannah District, the Georgia Environmental Protection Division ("Georgia EPD") issued a Section 401 WQC for nationwide permits including NWP 14 and 18, pursuant to Section 401 of the Clean Water Act. *See* 33 U.S.C. § 1341. *See also* Exhibit "G" at 22.  The authorization for both NWPs includes the following conditions:

      A.     "All work performed during construction will be done in a manner so as not to violate applicable water quality standards."

      B.     "No oils, grease, materials or other pollutants will be discharged from the construction activities that reach public waters."

      C.     "Georgia EPD may require submission of a formal application for individual 401 water quality certification for any project if it is determined, based upon consideration of Georgia's water quality rules, that the project is likely to have a significant adverse effect upon water quality."

      D.     "This certification is contingent upon satisfaction of the Savannah District's Regional Conditions, including the Appendix A provisions requiring prior notification to Georgia EPD before the commencement of NWP authorized projects."

54.     The Section 401 WQC issued by the Georgia EPD specifically for NWP 14 is contingent upon the following applicable condition:  "If adverse impacts and/or loss of waters of the US resulting from the construction of a total linear project (multiple single and complete linear projects) would cumulatively be 0.1 acre or more of wetland and/or 100 or more linear feet of stream, mitigation may be required for all impacts and losses for the total linear project." Exhibit "G" at 11.

55.     The Georgia EPD requires submission of a Pre-Construction Notification ("PCN") and project plans to the Georgia Department of Natural Resources' Coastal Resources Division prior to beginning work on NWP-authorized projects that are located in Bryan, Brantley, Camden, Charlton, Chatham, Effingham, **Glynn**, Liberty, Long, McIntosh or Wayne counties.  *See* Exhibit "G" at 14.

### *Section 404 NWP s 14 and 18*

56.     The Corps may issue general permits, as opposed to individual permits, to approve activities that have minimal individual and cumulative adverse environmental effects. These general permits can be issued for no more than five years.  33 U.S.C. § 1344.

57.     A CWA § 404 nationwide permit is a type of general permit that authorizes specific activities across the United States.

58.     Currently, the Corps has 52 existing nationwide permits. *See* Nationwide Permits Chronology and Related Materials, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, available at  https://www.epa.gov/cwa-404/nationwide-permits-chronology-and-related-materials.

59.     The basic premise of the Section 404 permit program is to prohibit discharge of dredged or fill materials into U.S. waters if a practicable alternative exists that is less damaging to the aquatic environment and surrounding ecosystem. *See* Section 404 Permit Program, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, available at https://www.epa.gov/cwa-404/section-404-permit-program.

60.     NWP 14 is a specific nationwide permit under the Corps' general permitting authority which allows for "[a]ctivities required for crossings of waters of the United States associated with the construction, expansion, modification, or improvement of linear transportation

projects." The permit may authorize impacts in no greater than one-half acre of waters of the United States. Nationwide Permit 14 - Linear Transportation Projects, Effective Date: March 19, 2017; Expiration Date: March 18, 2022 (NWP Final Notice, 82 FR 1860).[2]

61. NWP 18 is a specific nationwide permit under the Corps' general permitting authority which allows for "[m]inor discharges of dredged or fill material into all waters of the United States," provided the activity meets, among other things, the following criterion: The discharge will not cause the loss of more than 1/10-acre of waters of the United States. Nationwide Permit 18 – Minor Discharges, Effective Date: March 19, 2017; Expiration Date: March 18, 2022 (NWP Final Notice, 82 FR 1860).[3]

62. If a project does not "qualify for a nationwide permit, an individual permit is required." *See* Section 404 Permit Program, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, available at https://www.epa.gov/cwa-404/section-404-permit-program.

### *Citizen Suits*

63. CWA § 505(a)(1) provides that "any citizen may commence a civil action on his own behalf—against any person," including any government agency, "who is alleged to be in violation of (A) an effluent standard or limitation under this Act or (B) an order issued by the Administrator [of the Environmental Protection Agency] or a State with respect to such standard or limitation." 33 U.S.C. § 1365(a).

---

[2] Available at, https://www.swt.usace.army.mil/Portals/41/docs/missions/regulatory/NationwidePermits/Nationwide%20Permit%2014%20-%20Linear%20Transportation%20Projects.pdf?ver=2017-03-31-150712-910.

[3] Available at, https://www.swt.usace.army.mil/Portals/41/docs/missions/regulatory/NationwidePermits/Nationwide%20Permit%2018%20-%20Minor%20Discharges.pdf?ver=2017-03-31-150712-863.

64.     The CWA defines "citizen" as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g).

65.     CWA § 505 defines "effluent standard or limitation" to include "an unlawful act under subsection (a) of section 1311." 33 U.S.C. § 1365(f); *see also* 33 U.S.C. § 1311(a) (prohibiting unpermitted discharges).

66.     In addition, Section 505(f)(5) defines "effluent standard or limitation" to include "certification under section 1341 of this title." *See* 33 U.S.C. §1365(f)(5) also known as Section 401 of the Clean Water Act.

67.     The Clean Water Act defines "person" to include individuals, corporations, and political subdivisions of the state. 33 U.S.C. § 1362(5).

68.     Under Clean Water Act Section 309(d), "[a]ny person who violates [the Clean Water Act § 301] . . . shall be subject to a civil penalty," which 40 C.F.R. § 19.4 caps at $37,500 per day for each violation. 33 U.S.C. § 1319(d).

## GENERAL FACTUAL ALLEGATIONS

### *Captain's Cove History*

69.     The Captain's Cove Subdivision is an approximately 11.256-acre residential subdivision, including 3.379 acres of jurisdictional wetlands. *See* Pre-Construction Notification Form, February 6, 2017, attached as Exhibit "H".

70.     Defendant Mortgage of America owns and/or operates Captain's Cove and is directly responsible for protecting the jurisdictional wetlands on it by avoiding impacts and by installing and maintaining erosion and sediment control BMPs on the site.

71.     On March 2, 2017, the Savannah District Corps of Engineers, Savannah District transmitted the findings of its jurisdictional determination for Captains Cove to Mr. Ron Sluder. *See* Exhibit "I.  The findings stated that the subject property contained three forested wetlands,

labeled as Wetland "A", Wetland "B", and Wetland "C".  As shown in Figure 1, Wetland "A" is

an area of 0.141 acres of forested wetland, Wetland "B" is an area of 1.708 acres of forested

wetlands, and Wetland "C" is an area of 1.530 acres of forested wetlands.  .



**Figure 1**.  Jurisdictional Wetland Survey depicting locations of Wetland "A", Wetland "B", and Wetland "C" (Note that Wetland "C" was at one time indicated as a "borrow pit".)

***Captain's Cove Developers Submitted Inconsistent Information to the Corps and the State of Georgia Regarding their Intent to Discharge Storm Water and Pollutants from Detention Ponds into Downstream Jurisdictional Wetlands and Other Waters of the United States***

72.     A shown in Exhibit "H", Preconstruction Notification Form dated February 6, 2017, with drawings by Coastal Engineering Consultants, impacts to 0.343 acres to "Wetland Area B" were required for the proposed road construction and impacts of 0.099 acres to "Wetland Area C" were required to develop lots 21, 22, 25, and 26.

73.     On March 7, 2017, the Corps authorized Mortgage of America to use Nationwide Permits ("NWP") 14 and 18 for the proposed impacts to Wetlands "B" and "C" totaling 0.442 acres of forested wetlands.  *See* Exhibit "C".

74.     The March 7, 2017 authorization required that all work by Defendant at Captain's Cove be "located, outlined, designed, constructed and operated in accordance with the minimal requirements of the Georgia Erosion and Sedimentation Control Act of 1975" and that "[a]ll work be conducted in accordance with the approved plans titled 'Captains Cove Phases I and II, St. Simons Island, Glynn County Georgia, Mortgage of America, Sheets 1-4', dated February 4, 2017 and drawn by Coastal Engineering Consultants, Inc."  (These plans are included in Exhibit "H" at 7-10).  In addition, the authorization stated that "[t]his permit does not authorize installation of check-dams, weirs, riprap, bulkheads or other erosion control measures in streams, wetlands, or other waters of the United States.  Authorization would be required from the U.S. Army Corps of Engineers prior to installing any erosion control measures in waters of the United States."  Exhibit "C" at 2.

75.     NPDES General Permit No. GAR100003 requires the applicant to submit a site-specific Erosion, Sedimentation and Pollution Control Plan that complies with the technical requirements of the Manual for Erosion and Sediment Control in Georgia. In accordance with the

Permit, the Erosion and Sedimentation Control Plan "shall identify all potential sources of pollution which may reasonably be expected to affect the quality of stormwater discharges from the construction site. In addition, the Plan shall describe and the permittee shall ensure the implementation of practices which will be used to reduce the pollutants in stormwater discharges associated with construction activity at the site and to assure compliance with the terms and conditions of this permit. The applicable permittee must implement and maintain the provisions of the Plan required under this part as a condition of this permit."

76.     On April 10, 2017, Defendant submitted a Notice of Intent for coverage under the 2013 Re-issuance of the State of Georgia's NPDEQ General Permit to Discharge Storm Water Associated with Construction Activity, General NPDES Permit No. GAR100003.  The Notice of Intent included a certification signed by Ron Sluder stating that the "Erosion, Sedimentation and Pollution Control Plan (Plan) was prepared by a design professional . . . and that I will adhere to the Plan and comply with all applicable requirements of this permit."  *See* Exhibit "J".

77.     Defendant submitted to the State of Georgia its Revised Storm Water Management Report for Captain's Cove Subdivision, dated August 14, 2017, Exhibit "A".  This Report described the design plans for six (6) distinct pre-development basins to be constructed in Captain's Cove.  Basin B (at various times also labeled as Wetland "C" and, after conversion, Detention Pond A), is described in the Report as an "an abandoned borrow pit," that was to be 3.12 acres in size and contain 1.77 acres of wetlands.

78.     The Revised Storm Water Management Report stated that "there is no discharge from this isolated wetland area."  Nonetheless, the Revised Storm Water Management Report included "Detention Pond Stage VS Storage and Outlet Structure Information" that stated the pond

created from the "converted borrow pit" would be designed to contain the 100-year 24-hour storm event.  *See* Exhibit "A" at 9.

> 79.     The Storm Water Management Report also described the flow control structures to be placed in the Detention Pond(s) described as a "converted borrow pit." The "detention pond" was to include an outlet structure at an invert elevation of 9.50 ft. as the "primary flow control device" and an "emergency outflow weir" at an elevation of 11.0 ft.  *See* Exhibit "A" at 9.  Despite being described as "sufficient to contain the 100-year, 24-hour storm event, the Report stated that "[a]ny discharge from this outlet structure will be routed to the jurisdictional wetland area to the north in Basin A."  *Id.*

### *Defendant Failed to Install and Maintain Required Best Management Practices on the Captain's Cove Site*

> 80.     The Glynn County Community Development Department ("GCCDD") issued Mortgage of America a Notice to Comply on March 6, 2018, stating Captain's Cove was in violation of the Glynn County Erosion and Sediment Control Ordinance for failing to install and maintain a silt fence as shown on the approved plan.  Exhibit "K".

> 81.     On March 19, 2018, GCCDD issued a Stop Work Order to Mortgage of America documenting that BMPs had not been installed on Captain's Cove in accordance with approved plans.  Consistent with section 2-5-106-B of the Glynn County Code of Ordinances, Defendant was ordered to stop work due to lack of BMP installation and imminent threat to waters of the State.  *See* Exhibit "L".

> 82.     Again on March 29, 2018, the GCCDD issued Mortgage of America a Stop Work Order Inspection for failing to complete installation of the silt fence and failing to complete installation of the retention ponds in violation of the Glynn County Erosion and Sediment Control Ordinance.  Exhibit "M".

83.     ON April 2, 2018, A GCCDD code enforcement officer notified the GCCDD land disturbance engineer of fencing debris and other tree debris near the construction entrance to Captain's Cove which came from the land clearing area, and asked the land disturbance engineer if Mortgage of America's contractors would remove the debris as part of the Land Disturbance Permit or if GCCDD should move forward with an illegal dump violation by Mortgage of America's contractors.  Exhibit "N".

84.     The GCCDD engineer notified Mortgage of America on April 12, 2018, that Captain's Cove was still not in compliance with the Glynn County Erosion and Sediment Control Ordinance.  Exhibit "O".

85.     On April 19, 2018, the Corps, Savannah District, after receiving report of CWA violations at Captain's Cove, requested information from the Defendant's representative needed to determine whether work was being conducted in an area subject to Corps' jurisdiction.  *See* Exhibit "P".

86.     Despite being on notice of possible violations, beginning in June 2018 and continuing through November 2018, Defendant's agent submitted NPDES Inspection Reports that noted the failure of Mortgage of America to protect natural resource areas and wetlands with appropriate BMPs and failed to adequately install and repair perimeter controls and sediment barriers.  *See* Exhibit "Q".  Specific failures notes in the Inspection Reports are as follows:

      A.     The NPDES Site Inspection Reports for Captain's Cove dated June 1, 2018 and June 4, 2018 document that Mortgage of America failed to properly stabilize or protect disturbed areas not actively being worked on; failed to protect natural resource areas, such as wetlands, with barriers or other similar BMPs; and failed to adequately maintain perimeter controls and sediment barriers.

B.     The NPDES Site Inspection Reports dated June 8, 2018 and June 15, 2018 document that Mortgage of America failed to properly stabilize or protect disturbed areas not actively being worked on.

C.     The NPDES Site Inspection Report dated October 26, 2018 documents that Mortgage of America failed to properly stabilize or protect disturbed areas not actively being worked on; and failed to adequately maintain perimeter controls and sediment barriers.

D.     The NPDES Site Inspection Report dated November 9, 2018 documents that Mortgage of America failed to properly stabilize or protect disturbed areas not actively being worked on; failed to protect natural resource areas, such as wetlands, with barriers or other similar BMPs; and failed to adequately maintain perimeter controls and sediment barriers.

E.     The NPDES Site Inspection Reports dated November 16, 2018, November 21, 2018, November 26, 2018 and November 30, 2018 document that Mortgage of America failed to protect natural resource areas, such as wetlands, with barriers or other similar BMPs; failed to adequately maintain perimeter controls and sediment barriers; and failed to properly protect storm drain inlets.

F.     The NPDES Site Inspection Report dated November 30, 2018 documents that Mortgage of America failed to protect natural resource areas, such as wetlands, with silt/sediment barriers or other similar BMPs.

### Defendant Discharged Dredge and Fill Materials and Otherwise Adversely Impacted Wetlands in Excess of the Permitted Impact Areas

87.     The Memorandum for Record, CESES=RD-C (File Number, SAS 2014-00615) (Exhibit "R") documents the Corps' verification for issuing NWPs 14 and 18 for Captain's Cove.

Item 4.2.9 of the Memorandum places Special Condition 9 on the site which requires the following: "All work will be conducted in accordance with the approved plans titled 'Captain's Cove Phases I and II, St. Simons Island, Glynn County, Georgia, Mortgage of America Sheets 1-4 of 4.'" These approved plans, *see* Exhibit "B" at 2-4, do not depict or otherwise indicate that the Corps approved any impacts to the area labeled as "C. Borrow Pit" outside the boundaries of lots 21, 22, 25, and 26.

88.    A photograph taken on March 27, 2018, of Wetland "C", placed below in Figure 2 shows that the area surrounding the pit has been disturbed and is poorly stabilized. Another photograph taken on March 27, 2018 and placed below in Figure 3 shows that there is an area of woody vegetation in Wetland "C".



**Figure 2**. Photograph of Wetland "C" Taken on March 27, 2018.



**Figure 3**.  Photograph of Wetland "C" and Area of Woody Vegetation Taken on March 27, 2018.

89.    Even though the approved Pre-Construction Notification (Exhibit "H") and Memorandum for Record ("Exhibit "R") did not authorize Defendant to remove the woody vegetation from Wetland "C", this vegetation was removed sometime before February 28, 2019, when the photograph placed below in Figure 4 was taken.  The photograph in Figure 4 also demonstrates that Defendant conducted unauthorized dredging to deepen, widen, and shape the shoreline of Wetland "C".



**Figure 4**.  Photograph of Wetland "C" with Woody Vegetation Removed Taken on February 28, 2019.

90.     On January 25, 2019, the Corps, Savannah District, sent a letter to the Defendant's representative stating that it had received a complaint regarding work that had occurred in Captain's Cove.  *See* Exhibit "S". The letter stated that the Corps had determined from a site visit and desktop reconnaissance that "unauthorized fill had been placed in wetland during the construction of the roadway.   In addition, lot fill in Wetland "C" had been started but not completed." *Id.*

91.     Defendant's environmental consultant responded to the Corps' January 25, 2019 letter on April 16, 2019.  The letter acknowledged that Defendant's activities at Captain's Cove impacted wetland areas in excess of the authorized impacts of 0.055 acres associated with road construction and 0.143 acres associated with fill material placed in four (4) lots.  *See* Exhibit "T".

92.     Defendant's response proposed to remove the .055 acres of unauthorized fill associated with the road construction and to remove 0.139 acres of the 0.143 acres of fill in wetlands associated with the lots.  In addition, Defendant's response proposed the purchase of an additional 0.69 mitigation credits to account for temporary unauthorized impacts and fill proposed to be left in place for road construction.  *See* Exhibit "T".

93.     Defendant's response did not propose any mitigation activities to compensate for removal of the woody vegetation in Wetland "C", visible in the photographs in Figures 2 and 3 and removed in Figure 4.

94.     Plaintiffs have no information that confirms or denies whether the Corps approved the activities proposed in Defendant's January 16, 2019 letter and/or whether Defendant completed any of the proposed restoration activities or purchases of additional wetland mitigation bank credits.

## FIRST CAUSE OF ACTION

### Unauthorized Discharge from Detention Pond A in Violation of the Clean Water Act Sections 301(a) and 402

95.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

96.     Section 301 of the CWA prohibits discharges of any pollutant into waters of the United States except in compliance with standards promulgated and permits issued under other sections of the CWA.  33 U.S.C. § 1331.

97.     Section 402 of the CWA established the National Pollutant Discharge Elimination System ("NPDES"), a permit-based program which prohibits the discharge of any pollutant from a point source into waters of the United States. 33 U.S.C. § 1342.

98.   A discharge of pollutants from a point source into waters of the United States without a permit is a violation of CWA § 301, 33 U.S.C. § 1331.

99.   The term "discharge of pollutants" means "any addition of any pollutants to navigable waters from any point source."  33 U.S.C. § 1362(12).

100.   Rock, sand, and dredged spoil are included as pollutants under the CWA.  33 U.S.C. § 1362(6).

101.   Point sources may include "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).

102.   Such discharges of pollutants into waters of the United States without an NPDES are violations of § 402 of the CWA.

103.   Defendant's complete and knowing disregard for the requirements of the CWA indicates that it derives economic benefit from violating the law.

104.   Defendant will continue in these violations until it is no longer economically advantageous to do so.

105.   By committing the acts and omissions alleged above, Mortgage of America is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

106.   Plaintiffs are entitled to injunctive relief to remedy Defendant's violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Defendant's continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs, for which they have no plain, speedy, or adequate remedy at law.

## SECOND CAUSE OF ACTION

**Unauthorized Discharge of Dredge and Fill Material into Wetland "C" by Removing Vegetation and Constructing Storm Water Drainage Structures without a Permit in Violation of Clean Water Act Section 301(a) and 404**

107.    Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

108.    Mortgage of America was only authorized to fill the Subject Wetlands for purposes of NWP 14 (linear transportation project) and 18 (minor discharges).

109.    NWP 14 and 18 did not authorize Defendant's filling of the Subject Wetlands for the unauthorized purpose of removing vegetation, dredging to deepen and widen Wetland "C", discharging earthen fill in the course of conducting those activities, and installing concrete inlet structures, the storm outlet structure, and the emergency overflow system.

110.    Defendant's construction activities in Captain's Cove associated with the installation of the outlet structure and emergency overflow weir in Wetland "C" discharged and are continuing to discharge rock, sand, dredged spoil which are pollutants as defined by 33 U.S.C. § 1362(6) into waters of the United States located to the north in an area of jurisdictional wetlands referred to in Defendant's Stormwater Management Report as Basin A. *See* Exhibit "A" at 9.

111.    Because Defendant's fill of the Subject Wetlands was not in compliance with NWP 14 and 18 issued under Section 404 of the Clean Water Act, the fill in the Subject Wetlands is an illegal discharge into the waters of the United States in violation of Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a). Defendant continues to violate the Clean Water Act each day the unauthorized fill remains in the Subject Wetlands.

112.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d)

and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

113.    Plaintiffs are entitled to injunctive relief to remedy Defendant's violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Defendant's continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs, for which they have no plain, speedy, or adequate remedy at law.

## THIRD CAUSE OF ACTION

### Failure to Implement and Maintain BMPs for Erosion and Sediment Control as Required under the Georgia EPA General NPDES Permit No. GAR10003 and Glynn County Community Development Department Ordinances

114.    Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

115.    Discharges associated with construction activities, including clearing, grading, and excavation of at least one acre require an NPDES stormwater discharge permit. 33 U.S.C. §§ 1311(a) & 1342(p); 40 C.F.R. § 122.26(b)(15).

116.    The activities undertaken by Defendant at Captain's Cove included the clearing, grading, and excavating of more than one acre.

117.    The stormwater runoff from Captain's Cove has been discharged and continues to be discharged to waters of the United States.

118.    In Georgia, stormwater discharges associated with construction activities of this type are regulated by the Authorization to Discharge Under the National Pollutant Discharge Elimination System Storm Water Discharges Associated with Construction Activity for Common Development Projects.

119.     Defendant submitted a Notice of Intent for coverage under this permit on coverage April 10, 2017, and agreed to adhere to the Erosion, Sedimentation and Pollution Control Plan for the site.

120.     As evidenced by Defendant's own NPDES inspection reports and the two stop work orders issued by Glynn County Georgia Community Development District, Defendant failed to comply with its Erosion, Sedimentation and Pollution Control Plan for the site.

121.     The failure of Mortgage of America to maintain best management practices caused discharges of sediment-laden stormwater to flow into and remain in waters of the United States.

122.     By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

123.     Plaintiffs are entitled to injunctive relief to remedy Defendant's violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Defendant's continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs, for which they have no plain, speedy, or adequate remedy at law.

**<u>FOURTH CAUSE OF ACTION</u>**

**Noncompliance with Section 401 of the Clean Water Act 33 U.S.C. § 1311(a), 1341, 1365(a) and 1365(f)**

124.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

125.     Because Captain's Cove was authorized to place fill material only in 0.442 acres of the Subject Wetlands in specific, approved locations, Defendant did not comply with the 401

Water Quality Certification ("WQC") issued by the Georgia EPD, in accordance with Section 401 of the Clean Water Act.

126.    As a result, Defendant's filling of the Subject Wetlands was not in compliance with the 401 WQC for NWP 14 and 18, and the fill in the Subject Wetlands is an illegal discharge into the waters of the United States pursuant to Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a).

127.    Mortgage of America continues to violate the Clean Water Act each day the unauthorized fill remains in the Subject Wetlands.

128.    By committing the acts and omissions alleged above, Mortgage of America is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

129.    Plaintiffs are entitled to injunctive relief to remedy Mortgage of America's violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Defendant's continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs, for which they have no plain, speedy, or adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Attorneys' Fees, Costs, and Expenses under CWA § 505

130.    Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

131.    Throughout the course of events underlying this action, Defendant has acted in bad faith and has caused Plaintiffs the unnecessary trouble and expense of litigation. Therefore, Plaintiffs are entitled to recover as damages from Mortgage of America of all expenses of litigation including attorney's fees and expert witness fees under CWA § 505, 33 U.S.C. § 1365.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.   An order declaring that Mortgage of America illegally discharged and continues to illegally discharge fill material into the Subject Wetlands in violation of Sections 301(a), 401, 402, and 404 of the Clean Water Act.

B.   An order compelling Mortgage of America to restore the Subject Wetlands and downgradient waters of the United States.

C.   A civil penalty in the amount of $37,500 for each day of each violation of the Clean Water Act pursuant to 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4.

D.   An award for expenses and attorneys' fees, pursuant to 33 U.S.C. § 1365(d) and any other applicable laws;

E.   A jury trial on all issues raised in this complaint; and

F.   An award of such other relief as the Court deems just and proper.

Respectfully submitted on January 17, 2020.

/s/ E. Righton J. Lewis
E. Righton J. Lewis
Georgia Bar No. 215211
**BUTLER SNOW LLP**
1170 Peachtree Street NE
Suite 1900
Atlanta, Georgia 30309
(678) 515-5064 Telephone
(678) 515-5001 Facsimile
righton.lewis@butlersnow.com

**ATTORNEY FOR PLAINTIFFS**

51246113.v1