**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| GAYLE BAKER, DONALD J. BRUNNELLE, JUDITH A. BRUNNELLE, JANE FRASER, BURKE MCCALL HARRISON, VICKI S. HARRISON, JUDITH C. PHILLIPS, ROBERT W. WILLIAMSON, III, and RENEE J. WILLIAMSON,<br><br>        Plaintiffs,<br><br>v.<br><br>MORTGAGE OF AMERICA LENDERS, LLC,<br><br>        Defendant. | CIVIL ACTION NUMBER:<br><br>2:20-cv-00003 |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Defendant MORTGAGE OF AMERICA LENDERS, LLC (hereinafter "Defendant"), and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and S.D. Ga. L.R. 7.1 submits this its Brief in Support of its Motion to Dismiss Plaintiffs' Complaint, in support of which it relies upon all pleadings of record, and respectfully shows the following:

**I.   INTRODUCTION AND BACKGROUND**

    **A.   <u>Nature of the Case and Parties</u>**

This is an attempted citizen suit brought under the provisions of the Clean Water Act ("CWA"), 33 U.S.C.A. §§ 1251 *et seq*. Plaintiffs are individuals who live or own property in proximity to the Captains Cove residential development (Doc. 4, ¶¶11-16). Defendant Mortgage of America Lenders LLC is a company which applied for and received authorization to impact jurisdictional waters on St. Simons Island, Georgia, which activity is the subject of this action.

1

B.     **Allegations in the Complaint**

Taking the factual allegations in the Complaint as true,[1] the facts as pled are as follows: Defendant is the owner of the construction project known as Captains Cove Subdivision. On March 7, 2017, Defendant obtained authorization from the U S Army Corps of Engineers to fill certain jurisdictional waters to construct the infrastructure for the subdivision. (Doc. 4, ¶73). Plaintiffs are individuals who live or own property in proximity to the Captains Cove residential development (Doc. 4, ¶¶11-16).

Plaintiffs allege Defendant failed to install and maintain the required Best Management Practices ("BMPs") on the Captain's Cove site (Doc. 4, ¶¶80–86), Defendant discharged dredge and fill materials and otherwise adversely impacted wetlands in excess of the permitted impact areas (Doc. 4, ¶¶87– 94).

Plaintiffs claim they have been harmed by the discharge of stormwater from Wetland C (Doc. 4, ¶¶95–106), (ii) the removal of vegetation and the construction of stormwater drainage structures in Wetland C (Doc. 4, ¶¶107–113), (iii) the failure to implement and maintain BMPs for erosion and sedimentation control (Doc. 4, ¶¶114-123), and (iv) violations of Section 104 of the Clean Water Act (Doc. 4, ¶¶124-129).

Plaintiffs claim they have "an interest in the preservation of the aesthetic and recreational benefits of the wetlands directly on and adjacent to their property." (Doc.4, ¶¶11-16) Further, "plaintiffs have an interest in protecting and maintaining the health of coastal Georgia and its wetlands including the Subject Wetlands." (Doc. 4, ¶17). Plaintiffs "*do not,*" however, plead that either the environmental or aesthetic integrity of the downstream waters, or plaintiffs' ability to recreate there, have been impinged upon in any particular way; instead, they claim, in conclusory

---

[1] See Bell Atlantic Corporation, et al. v. Twombly, et al., 550 U.S. 544, 555 (2007).

fashion, they have been irreparably harmed in the manner for which they have no plain, speedy, or adequate remedy at law (Doc. 4, ¶113).

## II. STANDARD ON MOTION TO DISMISS

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled facts alleged in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). To survive a motion to dismiss, the complaint must include enough facts to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). The complaint must allege enough facts to state a claim to relief that is plausible on its face, meaning that the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Speaker v. U.S. Dept. of Health & Human Servs., 623 F.3d 1371, 1380 (11th Cir. 2010).

When faced with a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it is the plaintiff's burden to prove facts which show jurisdiction exists over its claim. Lee v. United States, 361 F.Supp.3d 1306 (S.D. Ga. 2019).

## III. ARGUMENT AND CITATION OF AUTHORITY

### A. PLAINTIFFS' ACTION IS BARRED BY SECTION 505(B)(1)(B) OF THE CLEAN WATER ACT.

When government enforcement action "begins and is diligently prosecuted, the need for citizen's suits vanishes." North and South Rivers Watershed Ass'n, Inc. v. Town of Scituate, 949 F.2d 552, 556 (1st Cir.1991)

Section 505 of the Clean Water Act authorizes citizens to bring a civil action against any person alleged to be in violation of an effluent standard or limitation. 33 U.S.C. § 1365(a). But no suit may be brought under this section "if the Administrator or State has commenced and is

3

diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order...." 33 U.S.C. § 1365(b)(1)(B). "The focus of the statutory bar to citizen's suits is whether corrective action already taken and diligently pursued by the government seeks to remedy the same violations as duplicative civilian action. Accordingly, citizen suits are barred where the EPA or the State is already acting to correct the violations upon which plaintiffs focus their action." (citations and punctuation omitted) Ortiz Osorio v. Municipality of Loiza, 39 F. Supp. 3d 159, 162–63 (D.P.R. 2014).

Under certain circumstances, an agency enforcement action can be considered the functional equivalent of an "action in a court." Coastal Fishermen's Ass'n v. Remington Arms Co., Inc., 777 F. Supp. 173, 179 (D. Conn. 1991), aff'd in part, rev'd in part, 989 F.2d 1305 (2d Cir. 1993). The criteria to which the court looks in making this determination are (1) whether the coercive powers of the administrative agency are equivalent to the powers of the EPA in a federal court (including the power to enforce compliance and the power to impose civil penalties) and (2) whether the agency proceedings contain procedural safeguards comparable to those available in a court action (including citizen intervention). Id. Thus, a citizen suit could be barred under § 1365(b) by certain agency enforcement actions. Id.

As noted in the Complaint, on October 11, 2019, the USEPA noticed the proposed issuance of the Consent Agreement and Final Order in Docket ID CWA-04-2019-9970(b). (Doc. 4, ¶29, See also Doc. 4-70). The proposed Consent Agreement in the notice was signed by Ron Sluder, a member of Defendant, on September 30, 2019 (See Doc. 4-7, p. 10) indicating the USEPA enforcement action was underway prior to Plaintiffs' Notice (Doc. 4-6). USEPA's action provides opportunity for public participation and, in fact, all of the Plaintiffs have provided questions and comments regarding the enforcement action. (See Doc. 4-8). Thus, prior to the filing of the instant

citizen suit, it was clear, even to Plaintiffs, the USEPA was pursuing an enforcement action against Defendants and that Plaintiffs would be able to participate, and in fact did participate, in such process. Where there is the opportunity for the complainants to participate in the process, and the enforcement action is being diligently pursued, a duplicative citizen suit is not warranted, nor even allowed, under the Clean Water Act.[2] Accordingly, Plaintiffs complaint should be dismissed.

> **B.   PLAINTIFFS LACK STANDING TO SUE BECAUSE THEY FAIL TO PLEAD AN "INJURY IN FACT."**

Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing standing, and standing must exist with respect to each claim. Wolff v. Cash 4 Titles, 351 F.3d 1348, 1353 (11th Cir. 2003). With regard to citizen suits under 33 U.S.C.A. § 1365(a), if a plaintiff cannot establish Article III standing to sue, then the court lacks jurisdiction over the matter. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 115, 118 (1998); Upper Chattahoochee Riverkeeper

---

[2] The intent of the US Supreme Court in Gwaltney appears clear, the "bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 60 (1987). However, Defendants acknowledge there is a split between the circuits regarding the application of §505(b)(1)(B) where the enforcement action is being pursued by USEPA without the resort to litigation. See California Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 728 F.3d 868, 873 (9th Cir. 2013)(only an action that is "in a court" triggers the statutory bar only an action that is "in a court" triggers the statutory bar); Jones v. City of Lakeland, Tennessee, 224 F.3d 518, 521 (6th Cir. 2000); *Friends of the Earth v. Consolidated Rail Corp.,* 768 F.2d 57 (2d Cir.1985); *Compare* N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate, 949 F.2d 552, 553 (1st Cir. 1991)(State administrative actions barred citizens suite under §505); Student Public Interest Research Group, Inc. v. Fritzsche, Dodge, and Olcott, 759 F.2d 1131 (3rd Cir.1985); Baughman v. Bradford Coal Co., 592 F.2d 215, (3rd Cir.1979), cert den. Bradford Coal Co. v. Baughman, 441 U.S. 961 (1979). However, The issue has not been acted upon by the 11th Circuit Court of Appeals and that defendant suggest the prohibition against citizen suits during the pendency of a diligently pursued administrative enforcement action is more respectful of the court's and the litigants' resources until there is a controversy that remains unresolved.

Fund, Inc. v. City of Atlanta, 953 F.Supp. 1541, 1552 (N.D. Ga. 1996) (standing to sue under Section 505 of the CWA is an issue of subject matter jurisdiction).

To demonstrate standing, Plaintiffs must show (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; *and* (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Environmental Servs., 528 U.S. 167, 180–81 (2000); Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs, 781 F.3d 1271, 1278–80 (11th Cir. 2015). Further, the mere fact that a statute creates a cause of action "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016).

Plaintiffs allege that the presence of unauthorized fill in Wetland C has resulted in "irreparable harm, for which they have no plain, speedy, or adequate remedy at law." (Doc. 4 at 113) but at no point do they say *how* they have actually been impacted. This is patently insufficient to allege an injury-in-fact for standing purposes. To survive a motion to dismiss, the complaint must include enough facts to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiffs have never alleged an injury in fact. In the context of environmental legislation, a generalized or abstract "ecosystem nexus," under which a person who uses any part of a contiguous ecosystem may be considered adversely affected by an activity, does not provide a sufficient basis for standing to challenge the activity. Lujan v. Defs. of Wildlife, 504 U.S. 555, 565 (1992). Rather, a plaintiff claiming injury from environmental damage must use the area *actually*

*affected* by the challenged activity, not an area roughly "in the vicinity" of it. Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 887-889 (1990). Further, the relevant showing for purposes of Article III standing is not injury to the environment but injury to the plaintiff. Friends of the Earth Inc. v. Laidlaw Environmental Servs, 528 U.S. at 181. "The allegation of standing requires specification, not imagination." Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd., 557 F.3d 1177, 1197 (11th Cir. 2009).

In those matters where this Court and its sister courts within the Eleventh Circuit have found an injury-in-fact sufficient to confer standing to bring a citizen suit under 33 U.S.C.A. § 1365(a), there was a common thread: that the allegations of harm contained something more than the mere *existence* of an alleged pollutant or danger to the environment, and factual assertions of specific harms more imminent than the possibility of future damage. See, e.g., Jones Creek Inv'rs, LLC v. Columbia Cty., Ga., 98 F.Supp.3d 1279, 1297 (S.D. Ga. 2015) (holding that conclusory allegations and general averments that organization's members use unspecified portions of a large tract of territory are insufficient to overcome a standing challenge; allegations will be sufficient to satisfy injury-in-fact where affidavits and evidence assert that defendant's conduct and members' concerns about that conduct "directly affects" the members' recreational, aesthetic, and economic interests); City of Mountain Park, Georgia v. Lakeside at Ansley, LLC, No. CV 1:05-2775-CAP, 2010 WL 11500087, at *3 (N.D. Ga. Feb. 16, 2010) (plaintiff's allegation that development activities caused silt and sediment-laden water to be discharged into lakes and surrounding wetlands constituted sufficient averment of "ongoing violation" to plead that discharge was continuous or intermittent under CWA); New Manchester Resort & Golf, LLC v. Douglasville Development, LLC, 734 F.Supp.2d 1326 (N.D. Ga. 2010) (corporate owner of wetlands suffered injury-in-fact, for standing purposes, in its suit alleging that upstream

landowner's sediment-laden storm water discharges in stream that passed through wetlands violated Clean Water Act (CWA); wetlands owner alleged it received sediment deposits of approximately 2,834.5 cubic yards from stream, which undermined health of wetlands and would require cleanup cost of $980,000, and even though plaintiff was a corporation, it had property and economic interests that were affected by the deposits); Flint Riverkeeper, Inc. v. Southern Mills, Inc., 276 F.Supp.3d 1359 (M.D. Ga. 2017), certification denied 261 F.Supp.3d 1345 (allegations in complaint brought by environmental group and property owners against protective fabric manufacturer for violations of CWA were sufficient to state a continuous or intermittent violation of the Act, as required for court's jurisdiction over the citizen suit; complaint alleged that manufacturer's land application system used to treat industrial wastewater generated at its plant was overburdened and oversaturated with polluted wastewater, causing loss of soil structure and increased runoff, and that such deficiencies, which caused high levels of sodium, calcium, potassium, nitrates, and other chemicals in navigable waters were continuous or intermittent, having the potential to reoccur).

  In stark contrast to this body of law, Plaintiff's' allegations concerning their supposed injury are nothing more than speculative and conclusory; and in the end, they rest not on any actual environmental or aesthetic degradation. Indeed, Plaintiffs merely assert they "have an interest in the preservation of the aesthetic and recreational benefits of the wetlands directly on and adjacent to their property..." (Doc. 4, ¶¶11-16). However, they have not set forth any allegations of injury to the aesthetic and recreational benefits of the wetlands on their property. (Complaint, *generally*). To the extent Plaintiffs complain of activities associated with Wetland C, Wetland C is entirely on

Property owned by Defendant,[3] and Plaintiffs have not alleged they have a right to traverse Defendant's property to use Wetland C. This is patently insufficient to allege an injury-in-fact for standing purposes. To survive a motion to dismiss, the complaint must include enough facts to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

Accordingly, Plaintiffs' Complaint must be dismissed for lack of standing.

### C. DEFENDANT HAS REMOVED THE EXCESS FILL FROM WETLAND A; THEREFORE, ALL ACTIONS ARE WHOLLY IN THE PAST AND NOT SUBJECT TO ENFORCEMENT.

To the extent the Subject Wetlands of Plaintiffs' Complaint includes the wetlands adjacent to the roadway,[4] Plaintiffs' standing fails. While it is true the remedial purpose of the CWA supports the conclusion that the ongoing presence of fill material in navigable waters constitutes a continuing violation, that violation only lasts so long as Defendant has not put in place remedial measures that clearly eliminate the cause of the violation. See Gwaltney of Smithfield v. Chesapeake Bay Found. Inc., 484 U.S. 49 (1987).

Here the U.S. Army Corps of Engineers, in its January 25, 2019, letter to Defendants, acknowledges the remedial action has been taken, stating

> In order to resolve the non-compliance associated with the roadway impacts, you voluntarily agreed to remove the unauthorized fill and provided photographs documenting the restoration work.… On September 28, 2018, staff completed a site visit with your agent, Mr. Stuart Sligh and determined that you had said it satisfied the conditions in the voluntary compliance letter and therefore the noncompliance action was closed.

---

[3] See Exhibit B, Exhibit C, Exhibit H, and Exhibit I to Plaintiffs' Complaint (Doc. 4). Additionally, if the entirety of Exhibit A had been attached to the Complaint, it too, would have shown that Wetland C is located entirely on Defendant's property.

[4] See Complaint (Doc. 4: Count One)

Complaint, Ex. S (Doc. 4-21). Thus, since Defendant has completed that remedial action, the Plaintiffs lack standing and this case must be dismissed.

### D. DEFENDANT'S REMOVAL OF WOODY VEGETATION FROM WETLAND C DID NOT VIOLATE THE CWA.

In late 2018, Defendant removed the woody vegetation from the lake that is Wetland C.[5] However, the removal of such does not require authorization under the Clean Water Act. See 33 C.F.R. §323.2(d). This is confirmed in Defendant's dealings with the Corps of Engineers. Specifically, in response to the January 25, 2019 letter, Defendant met with the Corps of Engineers on March 1, 2019, provided additional information on March 15, 2019, and responded in detail in a letter dated April 16, 2019. (Doc. 4-22) Therein, the only issue addressed was the addition of fill in wetlands, which later became the subject of the Environmental Protection Agency's enforcement action referenced above.

### E. PLAINTIFFS' COMPLAINT CONSTITUTES AN IMPERMISSIBLE "SHOTGUN" PLEADING.

The typical "shotgun" complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts … contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). They are "calculated to confuse the enemy, and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked...." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015), quoting T.F.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544, n. 14 (11th Cir. 1985). Shotgun pleadings violate the rule setting forth the notice pleading standard by failing, to one degree or another, to give the defendants adequate

---

[5] Defendant also removed household and commercial debris from the lake.

notice of the claims against them and the grounds on which each claim rests, and for that reason, are properly subject to dismissal. See Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018).

The Complaint in this matter is therefore a classic "shotgun pleading," and dismissal of each and every claim asserted therein is warranted.

## IV. CONCLUSION

This purported "citizen suit" should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6) because (1) there is an active enforcement action being pursued by the United States Environmental Protection Division;  and (2) Defendant's removed, and the Corps acknowledges such removal, the fill from areas other than Wetland C meaning there is no ongoing violation. Further, Plaintiffs lack standing to sue, and consequently the Court lacks subject matter jurisdiction over this action, because Plaintiffs fail to allege a concrete "injury-in-fact." Plaintiffs fail to state a claim for relief under the CWA because their anticipated harm off-site aesthetic recreational benefits does not rise above the speculative level. The lack of specificity as to the basis for their claims and the repetitive nature of their consistently reincorporated claims,  renders their Complaint an impermissible "shotgun pleading."  Finally, Plaintiff's allegations are conclusory throughout, and do not include enough facts to raise a right of relief above the speculation level as set forth in Bell Atl. Corp. v. Twombly.  For all these reasons, Defendant Sea Island respectfully requests that its Motion to Dismiss be GRANTED, that each and every claim asserted against it in Plaintiffs' Complaint be dismissed, that Plaintiffs take nothing, and that Defendant be awarded its costs incurred in this action.

Respectfully submitted this 17th day of February, 2020.

|  |  |
|---|---|
|  | HALL BOOTH SMITH, P.C. |
|  |  |
|  | *s/Charles A. Dorminy* |
|  | CHARLES A. DORMINY |
| 3528 Darien Highway, Suite 300 | Georgia Bar No. 001315 |
| Brunswick, Georgia 31525 | DARGAN SCOTT COLE, SR. |
| (912) 554-0093 – Phone | Georgia Bar No. 176524 |
| (912) 554-1973 – Fax | *Attorneys for Mortgage of America Lenders, LLC* |
| cdorminy@hallboothsmith.com |  |

12

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | |
|---|---|
| GAYLE BAKER, DONALD J. BRUNNELLE, JUDITH A. BRUNNELLE, JANE FRASER, BURKE MCCALL HARRISON, VICKI S. HARRISON, JUDITH C. PHILLIPS, ROBERT W. WILLIAMSON, III, and RENEE J. WILLIAMSON,<br><br>Plaintiffs,<br><br>v.<br><br>MORTGAGE OF AMERICA LENDERS, LLC,<br><br>Defendant. | CIVIL ACTION NUMBER:<br><br>CE19-00671 |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the following counsel of record in this case in accordance with true and correct copies of the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** via electronic delivery addressed as follows:

E. Righton J. Lewis, Esq.
BUTLER SNOW LLP
1170 Peachtree Street NE, Suite 1900
Atlanta, Georgia 30309
*Attorney for Plaintiff*

[*SIGNATURE APPEARS ON THE FOLLOWING PAGE*]

\\HBSBRUNSFS01\Data\Scans\cturner\Baker - MAL - Brief In Support of Defendant_s Motion to Dismiss - 02.14.2020.docx
12142-0001

13

This 17th day of February, 2020.

                                   HALL BOOTH SMITH, P.C.

                                   /s/ *Dargan Scott Cole, Sr.*
                                   CHARLES A. DORMINY
                                   Georgia Bar No. 001315

3528 Darien Highway, Suite 300     DARGAN SCOTT COLE, SR.
Brunswick, Georgia 31525            Georgia Bar No. 176524
(912) 554-0093 – Phone              *Attorneys for Mortgage of America Lenders, LLC*
(912) 554-1973 – Fax
cdorminy@hallboothsmith.com