# In the United States District Court for the Southern District of Georgia Brunswick Division

```
GAYLE BAKER, DONALD J.        )
BRUNELLE, JUDITH A. BRUNELLE, )
JANE FRASER, BURKE MCCALL     )
HARRISON, VICKI S. HARRISON,  )
JUDITH C. PHILLIPS, RENEE J.  )
WILLIAMSON, and ROBERT W.     )
WILLIAMSON, III,              )
                              )
     Plaintiffs,              )
                              )
     v.                       )     No. 2:20-CV-003
                              )
MORTGAGE OF AMERICA LENDERS,  )
LLC and TOWNECLUB             )
CONSTRUCTION, LLC,            )
                              )
     Defendants.              )
```

## ORDER

Before the Court is Defendant Mortgage of America Lenders, LLC's Motion for Summary Judgment (the "Motion"). Dkt. No. 35. The Motion has been fully briefed and is ripe for review. Dkt. Nos. 38-40, 45-46, 48-49, 74. For the reasons stated below, Defendant's Motion is **DENIED**.

## BACKGROUND

Plaintiffs in this case bring a putative citizen suit pursuant to the Clean Water Act, 33 U.S.C. § 1251 *et seq*. (the "CWA"). The parties include Plaintiffs Gayle Baker, Donald and Judith Brunelle, Jane Fraser, Burke McCall Harrison and Vicki S. Harrison,

Judith C. Phillips, Robert S. Williamson, III and Renee J. Williamson (collectively, "Plaintiffs") and Defendants Mortgage of America Lenders, LLC ("MA") and TowneClub Construction, LLC ("TowneClub") (collectively "Defendants").  Dkt. No. 63 ¶¶ 9-20.

Defendants are the owners of the construction project known as Captain's Cove Subdivision ("Captain's Cove"), a residential subdivision in Saint Simons Island, Georgia. Id. at 2.  Plaintiffs are individuals who live or own property near Captain's Cove. Id. at ¶ 2.

The United States Army Corps of Engineers ("the Corps") has determined that Captain's Cove contains 3.379 acres of jurisdictional wetlands.  Id. at ¶¶ 73-75.  In March 2017, the Corps issued Defendant MA two nationwide permits ("the Permits") granting permission to fill 0.442 acres of jurisdictional wetlands at Captain's Cove.  Id. at ¶ 77.  The Permits allowed MA to fill 0.343 acres at "Wetland B" and .099 acres in "Wetland C."  Id. at ¶ 76.

However, Defendant MA did not comply with the Permits.  Upon investigation, the Corps determined that Defendant MA filled more than the .343 acres authorized by its Wetland B Permit.  Dkt. No. 63 at ¶ 95; Dkt. No. 63-19.  Specifically, the Corps determined that unauthorized fill had been placed in wetland areas during the construction of the roadway.  Id.  Additionally, due to the expiration of the Permits, Defendant MA did not timely fill the

2

0.099 of Wetland C as authorized by the Permit. Id. Accordingly, Defendant MA acknowledged it would need to apply for additional authorization for that fill. Id. at ¶¶ 96-97. Nevertheless, Defendant MA continued the fill for lots located in and adjacent to Wetland C and sloped the banks of Wetland C. Id. at ¶94. Although the exact acreage filled by Defendant MA is contested, it is undisputed that Defendant discharged dredge and fill material into Wetland C without authorization. Id. at ¶¶ 94-95; Dkt. No. 39 at ¶ 15.

Thus, in January 2019, the Corps contacted Defendant MA regarding the unauthorized lot fill in Wetland C. Dkt. No. 63 at ¶ 95. In March 2019, Defendant MA acknowledged this unauthorized fill and, less than a month later, sent the Corps a series of proposed corrective measures. Id. at ¶¶ 96-97.

In September 2019, Plaintiffs sent a letter to counsel for Defendant MA notifying MA of its violations under the Clean Water Act and of Plaintiffs' intent to sue after sixty days. Id. at ¶24. Plaintiffs also sent the notice letter to the Environmental Protection Division of the United States Environmental Protection Agency ("EPA"). Id. at ¶25. Within sixty days, the EPA sent Defendant MA a letter regarding the Captain's Cove violations and enclosed a Proposed Consent Agreement and Final Order (the "Proposed CAFO"). Id. at ¶ 32; Dkt. No. 63-5. Plaintiffs received notice of the proposed CAFO. Dkt. No. 63 at ¶32. In November

2019, Plaintiffs submitted a comment to the EPA regarding the proposed CAFO and requested that the EPA specify the location(s) of the direct fill, indicate the areas of wetlands and other waters that had been adversely affected, and describe the resources affected by Defendant MA's alleged unauthorized activity. Id. at ¶35. The EPA responded to Plaintiffs' comments in March 2020, identifying the affected resources by attaching an "as-built" survey of the unauthorized fill. Id. at ¶36.

On September 17, 2020, the EPA filed its Administrative Consent Agreement and Final Order ("Final CAFO"). Id. at ¶37; Dkt. No. 63-22. In the Final CAFO, Defendant MA acknowledged that:

> Commencing on or about December 2018 to the present, the Respondent [MA], or those acting on behalf of [MA], discharged dredged and/or fill material into waters of the United States on the Site using earth moving machinery during activities associated with the construction of a residential development. To date, the unauthorized dredge and/or fill material remains in waters of the United States.

Dkt. No. 63-22 ¶ 16. Pursuant to the terms of the Final CAFO, Defendant MA admitted the jurisdictional and factual allegations and agreed to pay a civil penalty of $20,000. Id. ¶¶ 29-30. Plaintiffs notified Defendant MA of their intent to sue and filed the instant suit against Defendant MA only. Dkt. No. 40 at 5; Dkt. No. 1. Plaintiffs then amended their complaint against Defendant MA (the "Amended Complaint") to incorporate more

4

detailed facts and clarify the causes of action alleged. Dkt. No. 28.

In their Amended Complaint, Plaintiffs bring three causes of action, all of which allege violations of the CWA. In Count One, Plaintiffs allege that Defendant MA engaged in unauthorized discharge of dredge and fill material into Wetland C by removing vegetation and constructing storm water drainage structures without a permit, in violation of CWA Sections 301(a) and 404. See Dkt. No. 63 at ¶¶100-106; 33 U.S.C. § 1311(a).

In Count Two, Plaintiffs allege that Defendant MA failed to implement and maintain best management practices for erosion and sediment control as required by the Georgia Environmental Protection Division ("EPD") General NPDES Permit No. GAR100003 ("NPDES permit"), in violation of 33 U.S.C. § 1311(a). Dkt. No. 63 at ¶¶107-16.

Finally, in Count Three, Plaintiffs allege that Defendant MA's filling of the subject wetlands was done in unauthorized locations, in violation of CWA Section 401. See Id. at ¶¶117-22; 33 U.S.C. §§ 1311(a), 1341, 1365(a), 1365(f).

Plaintiffs seek declaratory relief that Defendants MA and TowneClub illegally discharged and continue to illegally discharge fill material into the Subject Wetlands, an order compelling Defendants MA and TowneClub to restore the Subject Wetlands and downgradient waters of the United States, and a civil penalty in

the amount of $37,500 for each day of each violation of the CWA. Dkt. No. 63 at 31.

Defendant MA moved to dismiss the Amended Complaint, arguing that Plaintiffs lacked standing. Dkt. No. 30. After analyzing the Amended Complaint and the parties' briefs, the Court exercised its discretion to convert Defendant MA's motion to dismiss into a motion for summary judgment. Dkt. No. 34 at 4; see also Fed. R. Civ. P. 12(d). Specifically, the Court concluded it was unable to ascertain, without more information, whether the EPA's action against Defendant MA would preclude Plaintiffs' civil suit and whether Plaintiffs indeed had standing. Dkt. No. 34 at 3. The Court gave the parties thirty days to engage in discovery limited to the issue of Plaintiffs' standing. Id. at 4.

Following discovery, Defendant MA filed the instant Motion for Summary Judgment. Dkt. No. 35. Defendant MA argues that (1) Plaintiffs have failed to establish Article III standing, (2) Plaintiffs' action is barred by Section 505(B)(1)(B) of the CWA, and (3) Plaintiffs' claims for injunctive relief are moot because Defendant MA no longer owns the Captain's Cove lots. Dkt. No. 35-1 at 9, 16.

In its reply brief, Defendant MA withdrew its Article III standing argument. Dkt. No. 48. Thus, Defendant MA's only remaining arguments are its Section 505(B)(1)(B) bar argument and its mootness argument.

Thereafter, Plaintiffs sought leave to add TowneClub Construction, LLC as a Defendant in this case. Dkt. No. 58. During discovery, Plaintiffs learned TowneClub is the owner of certain lots in Captain's Cove. Id. at 2. While the time to amend had passed, Plaintiffs explained TowneClub had not purchased the lots until about January 15, 2021. Id. Accordingly, this Court granted Plaintiffs' motion, dkt. no. 60, and Plaintiffs filed their Second Amended Complaint adding Defendant TowneClub to this case. Dkt. No. 63. The Second Amended Complaint is thus the operative pleading. Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999). Both parties agreed at oral argument that the Motion before the Court applies to the Second Amended Complaint.[1]

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow

---

[1] The Second Amended Complaint supersedes the previously filed Amended Complaint, thus rendering Defendant MA's Motion for Summary Judgment moot as it applies to the Amended Complaint. See Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999). However, Plaintiffs' claims against Defendant MA in the Second Amended Complaint are virtually identical to those in the Amended Complaint. Compare Dkt. No. 28 with 63. Thus, with the parties' agreement, the Court deems Defendant MA's Motion for Summary Judgment applicable to the Second Amended Complaint.

"a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id.

8

at 1117. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

The Court will consider each of Defendant MA's remaining grounds for summary judgment: 1) Plaintiffs' claims in Counts One and Three are barred due to Section 505(b)(1)(B) of the Clean Water Act, and 2) Plaintiffs' claims are moot. As explained below, the Motion must be **DENIED** on both grounds.

**I. Section 505(b)(1)(B)**

    **a. The statutory language unambiguously requires a judicial action in order to bar citizen suits.**

As to the first ground, Defendant MA argues that because the EPA completed an enforcement action against Defendant MA for the unauthorized fill placed in jurisdictional waters, Section 505(b)(1)(B) of the Clean Water Act bars Plaintiffs' citizen suit. Because the plain language of the statute demands an action in a court of the United States or a State in order for the citizen suit bar to apply, this argument must fail.

The Clean Water Act authorizes citizen suits to enforce the Act's requirements. 33 U.S.C. § 1365(a)(1). However, these suits are barred if "the Administrator [of the EPA] or [a] State [agency]

has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order[.]" Section 505(b)(1)(B) (codified at 33 U.S.C. § 1365(b)(1)(B)). This bar is in place because citizen suits are intended to "supplement, not supplant government action"; furthermore, because "'[t]he great volume of enforcement actions [are intended to] be brought by the State [or Administrator],' citizen suits are proper only 'if the Federal, State and local agencies fail to exercise their enforcement responsibility.'" Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987) (citing S. Rep. No. 92-414, p. 64 (1971)). Where the enforcement action is accomplished through litigation capable of requiring compliance with the CWA, "[d]iligence is presumed." South River Watershed Alliance, Inc. v. Dekalb Cnty., Ga., 484 F. Supp. 3d 1353, 1367 (N.D. Ga. Aug. 31, 2020) (citing Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., 523 F.3d 453, 459 (4th Cir. 2008)).

However, where the "action" is an enforcement action done by an agency outside of a court, there is a circuit split as to whether citizen suits can be barred. The Eleventh Circuit has not yet weighed-in on this issue. The question for this Court to answer, then, is whether the Final CAFO entered into on September 17, 2020 between the EPA and Defendant MA is considered an "action in a court of the United States, or a State[.]" 33

10

U.S.C. § 1365(b)(1)(B). That is, when Congress elected to use the words "court of the United States, or a State," did they mean, well, an actual court of the United States or a State? Basic principles of statutory construction lead the Court to conclude, as a clear majority of Circuits have, that "court of the United States, or a State" does mean an actual court.

As an initial matter, it is a "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). Further, when a court finds the statutory language unambiguous, "judicial inquiry is complete, except in 'rare and exceptional circumstances.'" Garcia v. United States, 469 U.S. 70, 75 (1984) (quoting TVA v. Hill, 437 U.S. 153, 187 n.33 (1978)).

The Court finds the Second Circuit's opinion in Friends of the Earth v. Consolidated Rail Corp., 768 F.2d 57 (2d Cir. 1985), instructive on this point. In Friends of the Earth, the Second Circuit considered whether Section 505(b)(1)(B) barred citizen suits brought after administrative proceedings by a state agency had concluded. 768 F.2d at 61. Acknowledging that the Third

Circuit[2] had found state agency proceedings *could* be considered a "court," the Second Circuit nevertheless held that "[t]he Clean Water Act citizen suit provision unambiguously and without qualification refers to an 'action in a court of the United States, or a State,'" not administrative proceedings or other non-judicial actions. Id. at 62 (citing 33 U.S.C. § 1365(b)(1)(B)).

The Second Circuit noted that the plain language of Section 505(b)(1)(B) referenced judicial proceedings but did not mention administrative enforcement actions, and that Congress did not unintentionally leave these actions out in drafting the statute. "Congress has frequently demonstrated its ability to explicitly provide that either an administrative proceeding or a court action will preclude citizen suits . . . . Had Congress wished to impose this broader prohibition on citizen suits under the Clean Water Act, *it could easily have done so*. It did not." Id. at 63 (emphasis added) (discussing examples like the Toxic Substances Control Act, 15 U.S.C. § 2619(b)(1)(B) (1982); Endangered Species Act, 16 U.S.C. § 1540(g)(2) (1982); Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. § 1415(g)(2) (1982); and the Hazardous and Solid Waste Amendments of 1984, Pub. L. No. 98-616, § 401(d), 98 Stat. 3221, 3269-70 (amending Solid Waste Disposal Act, 42

---

[2] Baughman v. Bradford Coal Co., Inc., 592 F.2d 215, 217-19 (3d Cir. 1985) (examining the language "court of the United States or a State" in the context of 42 U.S.C. § 7604(b)(1)(B)).

U.S.C. § 6972(b) (1982))).

Against this backdrop, the Court concludes the language "action in a court of the United States, or a State" is unambiguous and means what it says. Thus, agency enforcement actions, which do not take place in a court of the United States or a State, do not bar citizen suits.

The Court's conclusion is also supported by the legislative history of the Clean Water Act. The Second Circuit in Friends of the Earth noted that there was no "indication that Congress meant other than what it plainly stated in section 505(b)(1)(B)" and found that Congress modeled the citizen suit provision explicitly on the Clean Air Act. Id. at 63. This parallel is key to understanding the citizen suit bar provision: "[i]n enacting the Clean Air Act provision, 'Congress made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests.'" Id. (quoting Friends of the Earth v. Carey, 535 F.2d 165, 172 (2d Cir. 1976)). Thus, while citizen suit bars undoubtedly exist, they are to be construed narrowly. See Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1525 (9th Cir. 1987) (finding the legislative history of Section 505 demanded "citizens should be unconstrained to bring these actions, and that courts should not hesitate to consider them" (quoting S. Rep. No. 414, 92d Cong., 2d Sess.); see also Friends of the Earth, 768 F.2d at

13

63; Jones v. City of Lakeland, TN, 224 F.3d 518, 521 (6th Cir. 2000); accord Nat. Res. Def. Council, Inc. v. Train, 510 F.2d 692, 700 (D.C. Cir. 1974) (in the context of the Clean Air Act).

### b. Baughman and other caselaw do not support barring Plaintiffs' citizen suit under Section 505(b)(1)(B).

Defendant MA argues this Court should follow the First and Third Circuits and find the term "court of the United States" includes agency proceedings. Dkt. No. 35 at 16 (citing Coastal Fishermen's Ass'n v. Remington Arms Co., Inc., 777 F. Supp. 173, 179 (D. Conn. 1991)). Defendant MA argues that this approach is in line with Gwaltney, which found "Congress did not intend for citizen suits to supplant such governmental action." Dkt. No. 46 (citing Gwaltney, 484 U.S. at 50).

This argument is deficient in two respects. First, Gwaltney's explanation of Congressional intent assumed that the Administrator or the State had brought an enforcement action which satisfied Section 505(b)(1)(B). See Gwaltney, 484 U.S. at 59-61 (noting that if the Administrator or a State satisfies Section 505(b)(1)(B)'s "enforcement action" requirement, a citizen suit is unnecessary). This point is inapposite to a question of whether a proceeding qualifies as an action under Section 505(b)(1)(B) in the first place. Second, the First and Third Circuit cases upon which Defendant MA relies do not stand for the proposition that

14

Section 505(b)(1)(B)'s "court of the United States" language includes agency proceedings.

As to the First Circuit, Defendant MA cites to North & South Rivers Watershed Ass'n, Inc. v. Town of Scituate, 949 F.2d 552, 555 (1st Cir. 1991), in support of including agency proceedings as a "court," but this case spoke to a different section of the CWA altogether. North & South Rivers Watershed interpreted 33 U.S.C. § 1319(g)(6)(A), which states "any violation [of the Clean Water Act] . . . with respect to which a State has commenced and is diligently prosecuting an action under a State law . . . shall not be the subject of a civil penalty action under . . . § 1365." This section resembles, but is different from, Section 505(b)(1)(B), which states "[n]o action may be commenced under [the citizen suit provision] if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action *in a court of the United States, or a State* to require compliance[.]"  33 U.S.C. § 1365(b)(1)(B) (emphasis added). Section 1319(g)(6)(A) does not include the crucial language "court of the United States, or a State," and thus a court interpreting that section need not speak to whether such language requires a judicial proceeding or not.

As to the Third Circuit, Defendant MA cites to Baughman v. Bradford Coal, Co.—which analyzes the Clean Air Act's "court of the United States, or a State" language—in arguing this Court

15

should follow its approach and bar the instant citizen suit. Dkt. No. 35-1 at 16-18. As an initial matter, Baughman did not meaningfully analyze whether "court of the United States, or a State" is ambiguous; instead, the court assumed the language must have some room for interpretation. 592 F.2d at 217-18. However, even if this Court were to assume "court of the United States" *is* ambiguous, the Court is not compelled to find Plaintiffs' suit is barred by the EPA's enforcement action. This is because Baughman itself found the underlying agency proceeding did *not* qualify as a court action under its two-pronged analysis.

Baughman held that "for [an agency proceeding] to be a 'court' . . . , that tribunal must" have 1) enforcement powers strong enough to ensure compliance, and 2) procedural safeguards which mirror federal suits. 592 F.2d at 218-19. The court in Baughman found a particular state agency's action could *not* satisfy these factors because its financial deterrents were limited and because the agency was not required to include citizens in the enforcement process through intervention or other means. Id. at 219. A later Third Circuit case followed the Baughman approach and found EPA enforcement actions were similarly insufficient on both prongs. See Student Pub. Interest Rsch. Grp. of N.J., Inc. v. Fritzche, Dodge & Olcott, Inc., 759 F.2d 1131, 1135-39 (3d Cir. 1985). Thus, even if the Court were to adopt the Baughman approach, it does not follow that the EPA's enforcement action would qualify as a "court"

16

or that it must necessarily bar Plaintiffs' citizen suit. Moreover, Defendant MA's argument that the EPA's enforcement action *would* pass muster under Baughman's approach is incomplete and unpersuasive. Dkt. No. 35-1 at 16-18. Regardless, this Court's ruling that Section 505(b)(1)(B)'s language is unambiguous obviates the need to delve into the Baughman approach.

In short, the text of Section 505(b)(1)(B) counsels for barring citizen suits only when a court action is filed. The plain language of the CWA requires such an action, and, because Congress has demonstrated in similar statutes its ability to explicitly state an administrative proceeding will preclude citizen suits, the Court concludes Congress did *not* unintentionally exclude administrative proceedings under Section 505(b)(1)(B). This view follows the legislative intent behind the CWA, as it shows citizen suits are an important part of the enforcement scheme, rather than a nuisance. The majority of Circuits that have weighed-in on this issue have found similarly. See, e.g., Friends of the Earth, 768 F.2d 57 (2d Cir.); City of Lakeland, 224 F.3d 518, 521 (6th Cir.); Sierra Club, 834 F.2d 1517 (9th Cir.); Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp., 207 F.3d 789, 795 (5th Cir. 2000) (interpreting this language in the context of the Clean Air Act). Therefore, Defendant MA's Motion for Summary Judgment on the Section 505(b)(1)(B) ground must be **DENIED**.

II. **Mootness**

Defendant MA's second argument for summary judgment is that Plaintiffs' claims for injunctive relief became moot when MA sold part of the subject land to Defendant TowneClub.  Because monetary relief is not mooted by Defendant MA no longer having a current possessory interest in the land, and because Plaintiffs may obtain injunctive relief against Defendant MA in its role as the NPDES permit holder, this argument must also fail.

Defendant MA argues that because it has sold some of the Captain's Cove lots to Defendant TowneClub, it is no longer responsible for the property and any injunctive relief claims must be dismissed as moot.  These arguments ignore that Defendant MA still holds the NPDES permits, which make it liable for any violations of the permits' terms.[3]

As Justice Scalia noted in Gwaltney, "[l]ongstanding principles of mootness" disfavor dismissing a suit where defendants seek to evade sanction in predictable ways.  484 U.S. at 66.  The party asserting mootness "bears the heavy burden" of proving the court cannot provide any meaningful relief. Jacksonville Prop. Rts. Ass'n, Inc. v. City of Jacksonville, FL,

---

[3] As an aside, Defendant MA conceded at the hearing on September 14, 2021 that selling the lots cannot moot Plaintiffs' request for monetary relief. See Dkt No. 35-1 at 19 (arguing only injunctive relief claims are moot), dkt. no. 40 at 24 (arguing Defendant MA conceded Plaintiffs' claims for monetary relief are not moot); see also Atl. States Legal Found., Inc. v. Tyson Foods, Inc., 897 F.2d 1128, 1135 (11th Cir. 1990) (noting that, even if injunctive relief were mooted, "the mooting of injunctive relief will not moot the request for civil penalties as long as such penalties were rightfully sought at the time the suit was filed").

635 F.3d 1266, 1274 (11th Cir. 2011).  Defendant MA may not own all the relevant property at this point—but that is not dispositive of the mootness issue.  An NPDES permit holder remains responsible for both compliance with the permit's terms and any violations of those terms until the *permit* is properly transferred or terminated. Coward v. Forestar Realty, Inc., No. 4:15-CV-0245-HLM, 2018 WL 1991049 (N.D. Ga. 2018).  There is no suggestion here that either transfer or termination has occurred.  Thus, to the extent Defendant MA is in noncompliance with the state-issued NPDES permits it owns, Plaintiffs have a live claim for injunctive relief.  Thus, Defendant MA's Motion for Summary Judgment on the mootness ground must be **DENIED**.

## CONCLUSION

For the above reasons, Defendant MA's Motion for Summary Judgment, dkt. no. 35, is **DENIED** in its entirety.

**SO ORDERED**, this 30th day of September, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA